# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| Michael J. O'Donnell, | : | Case No. 1:08CV1056 |
| | : | |
| Plaintiff | : | Judge Sara Lioi |
| | : | |
| v. | : | Magistrate Judge David S. Perelman |
| | : | |
| Commissioner of Social Security, | : | **REPORT AND RECOMMENDED** |
| | : | **DECISION** |
| Defendant | : | |

This action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3)seeking judicial review of defendant's final determination denying plaintiff's claims for disability benefits, (DIB), 42 U.S.C. §§416, 423 and supplemental security income benefits (SSI), 42 U.S.C. §1381 et seq., is pending decision upon the parties' submissions on the merits, pursuant to which plaintiff seeks entry of final judgment in his favor, alternatively, an order of remand, and defendant seeks final judgment upholding the decision below.

Plaintiff's right to benefits under both programs is dependent upon a showing that he is disabled, as that term is defined in the Social Security Act.  Disability is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for not less than 12 months."  42 U.S.C. §§423(d)(1), 1383c(a).  The programs differ with regard to other qualifying criteria.  The disability benefits statute requires "fully insured" status, which

focuses on the period of time the claimant has worked while covered by Social Security. The SSI program focuses on income and resources as basic eligibility factors.

Plaintiff applied for benefits on April 4, 2003, alleging an onset date of December 12, 2002. In an accompanying Disability Report - Adult the questions "What are the illnesses, injuries or conditions that limit your ability to work?" and "How do your illnesses, injuries or conditions limit your ability to work?" were answered "I have always been unable to read or comprehend what I do read. This has caused me to lose job after job" and "Unable to comprehend written orders."[1]

Upon denial of the plaintiff's claims at the state agency level a de novo hearing before an Administrative Law Judge (ALJ) was requested. Evidentiary hearing was held via teleconference on December 23, 2005, with the plaintiff and his counsel in Cleveland, Ohio and the ALJ and a vocational expert, Ms. Randi Langford-Hetrick, in Long Beach California.[2] When asked by the ALJ why he was unable to work the plaintiff first alluded to "my back and my knee and my hand." The ALJ then asked the plaintiff whether there were other limitations that interfered with his ability to work, and the plaintiff responded "I can't remember things and stuff like that and I'm taking Paxil." He maintained that his physical impairments limited his ability to stand to about 10 to 15 minutes, after which "It starts hurting and I have to sit down and if I'm sitting I can only sit like 10, 15 minutes and then I have to stand," the "it" being "right in the middle of my back down to the lower part of it." He later testified that he lost his last job as a machinist in 2002 because "I couldn't keep up fast enough because I didn't understand what was supposed to be done." He further testified that on some of the jobs he had held over a period of years he had trouble getting along with co-workers,

---

[1]It appears that the form was written by someone other than the plaintiff.

[2]The transcript reflects that the plaintiff was accompanied by his sister, Mrs. Marie Lasko, but she did not testify. She had previously submitted written statements regarding the plaintiff.

2

who often teased him and made his life miserable because of his slowness.[3]

In examining the vocational expert the ALJ propounded the following line of inquiry:

Q.  All right.  Okay.  Let me give you a hypothetical based on Mr. O'Donnell's educational and occupational experience.  I have an individual at the time of the application of 44 years of age.  This person is a high school graduate.  This individual graduated from high school, but was in special education.  This individual—I really don't have a documented exertional limitation at this time. He did have surgery in 2002, but he [sic] doctor indicated that there was no permanent continuing disability other than a 60-day period post-surgery.

A.  Got it.

Q.  The real limitations come then on exertional field.

A.  Okay.

Q.  I think of four different spheres of occupational functional limitation and they are the ability to remember—to understand, remember and carry out instructions.  Secondly, the ability to appropriately interact in the work place.

A.  Okay.

Q.  That includes co-workers, supervisors and the public.

A.  Okay.

Q.  The ability to exercise usual and ordinary judgmental decisions in an ordinary and customary work environment.  And finally, the ability to adjust to routine changes in the work environment.

A.  Okay.

Q.  In evaluating those, the criteria that I use is on a continuum between mild and marked.  The focus is the ability to—or the test is the ability to complete a particular task and so I identified the four tasks and the measure would be mild, moderate or marked.

_____

[3]It also appears that the plaintiff had problems with personal hygenie, which might have effected his relationships with co-workers and supervisors.

3

At marked the ability—the individual is totally precluded from completing a task.  At mild the impairment is notable, but does not substantially interfere with completing the task.  Moderate is in between.  It does not totally preclude completion of the task, but it is a substantial impairment.  Okay.

A.  Okay.

Q.  Understand?

A.  I do.

Q.  With regard to the ability to follow instructions, to understand, remember and carry out instructions, this is an individual who is limited to simple instructions.

A.  Okay.

Q.  And even with simple instructions this is an individual that's going to have a mild impairment of the ability to understand, remember and carry out simple instructions.

A.  Okay.

Q.  With regards to the ability to appropriately interact with co-workers—

A.  Okay.

Q.  —and general public here the limitation is moderate.

A.  Is moderate?

Q.  There the limitation is moderate.

A.  Okay.

Q.  With the ability to exercise judgment in the work place the impairment is mild.

A.  Okay.

Q.  With regards to the ability to adjust to routine changes in the work environment the impairment is moderate.  So given those

4

limitations can such an individual perform any of the past relevant work identified to the Claimant?

The vocational expert testified that such an individual could not work as a construction laborer or janitor, but could probably work as a cleaner/housekeeping, and that the jobs of punch press operator, deburring and kitchen helper would be within the individual's capabilities.

When examined by plaintiff's counsel the vocational expert was presented with a different hypothetical question.

> ATTY:  Extremely limited in the ability to carry out detailed instructions.  Extremely limited in the ability to maintain attention and concentration for extended periods.  The person would be extremely limited in the ability to set realistic goals or make plans independently of others.  And this person would be markedly limited in the ability to accept instructions and respond appropriately to criticism from supervisors. Markedly limited in the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.  Markedly limited in the ability to respond appropriately to changes in the work setting.  Let's just start with those limitations for now.
>
> VE:  Yeah.
>
> ATTY:  Could such an individual Ms. Hetrick, do the past relevant work for [sic] any other job in the economy with those limitations?
>
> VE:  No, could not.

On February 22, 2006 the ALJ entered his opinion denying plaintiff's claims.  That decision became defendant's final determination upon denial of review by the Appeals Council on February 28, 2008.  The ALJ's Findings, which represent the rationale of decision, were:

> 1.  The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section

5

216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's learning disorder, depression and personality disorder are considered "severe" based on the requirements in the Regulations 20 CFR §404.1520(c) and 416.920(c). The claimant does not have any "severe" physical impairment.

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the residual functional capacity for simple instructions, with a mild impairment in his ability to understand, remember, and carry out simple instructions, he has a moderate impairment in his ability to appropriately interact in the work place, including with coworkers, supervisors and the public, and he has a moderate impairment in his ability to adjust to routine changes in the work environment.

7. The claimant's past relevant work as a kitchen helper and deburring did not require the performance of work-related activities precluded by his residual functional capacity (20 CFR §§404.1565 and 416.965).

8. The claimant's medically determinable learning disorder, depression and personality disorder do not prevent the claimant from performing his past relevant work.

9. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR

6

§§404.1520(f) and 416.920(f)).[4]

The standards which control on a review of this nature were summarized by the Sixth Circuit

in Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) as follows:

> Judicial review of the Secretary's decision is limited in scope to determining whether the findings of fact made by the Secretary are supported by substantial evidence and deciding whether the Secretary employed the proper legal criteria in reaching her conclusion, Walston v. Gardner, 381 F.2d 580, 585 (6th Cir. 1967). This Court may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility, Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972). Rather "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive..." 42 U.S.C. §405(g).
>
> The Supreme Court has stated that "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantiality of the evidence must be based upon the record taken as a whole. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980), citing Futernick v. Richardson, 484 F.2d 647 (6th Cir. 1973). "Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the `substantiality of evidence must take into account whatever in the record fairly detracts from its weight'." Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978), quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474 (1951). "We may not focus and base our decision entirely on a single piece of evidence, and disregard other pertinent evidence." Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir. 1978).

In resolving the issue of whether the defendant's final determination is supported by

substantial evidence the decision upon judicial review cannot turn upon whether the reviewing court

---

[4]In plaintiff's brief it is stated that "On 4/30/2008, O'Donnell filed a new application for benefits for SSD, which was accepted on 10/27/2008. O'Donnell was awarded benefits going back to only 4/2007 instead of his originally alleged onset date of 12/12/2002 because O'Donnell filed the application in 4/2008. SSD benefits go back up to only 1 year from filing date, and SSA couldn't pay prior to 2/24/2006 because of the adverse ALJ decision on 2/23/2006." While this representation is not supported by any documentation, this Court has no reason to doubt its reliability. Nevertheless, this Court has no idea of the basis of the 2008 claim and/or the award, and there has been no suggestion that it could support a remand under the sixth sentence of §405(g).

agrees with the Secretary's determination.  Indeed, the reviewing court may conclude that substantial

evidence would support a final determination contrary to that arrived at by the defendant and yet be

obliged to affirm the defendant's final determination.  In <u>Mullen v. Bowen</u>, 800 F.2d 535, at 545 (6th

Cir. 1986), the court cited with approval the following from <u>Baker v. Heckler</u>, 730 F.2d 1147, 1150

(8th Cir. 1984):

> The substantial-evidence standard allows considerable latitude to
> administrative decision makers.  It presupposes that there is a zone of
> choice within which the decision makers can go either way, without
> interference by the courts.  An administrative decision is not subject
> to reversal merely because substantial evidence would have
> supported an opposition decision.

On this appeal plaintiff presents the following Statement of Errors:

1.  The ALJ *did not give proper deference* to the well-documented
    medical opinions of O'Donnell's treating physicians and medical
    professionals when the ALJ selectively considered parts of the
    medical evidence that corroborated his decision.  The ALJ's
    decision is not supported by substantial evidence.

2.  The ALJ *failed* to call a Medical Examiner to testify and instead
    substituted his own lay opinion when deciding the validity of
    O'Donnell's medical impairments.

3.  The ALJ *ignored* duly admitted evidence under oath that addressed
    special accommodations that assisted O'Donnell to perform his
    work duties, which establishes that he had not engaged in
    substantial gainful activity under Soc. Sec. Rul. 06-03p and 85-16.
    At the 5th Step, the ALJ submitted a flawed hypothetical question
    to the VE that improperly resulted in the job that O'Donnell could
    work as a deburrer.

Subsumed within the first of the foregoing is the argument that the plaintiff should have been

found disabled as meeting or equaling Listing 12.05(C) of the Listings of Impairments.  That Listing

is a subsection of the Listing called for recognition of disability based upon "Mental Retardation and

Autism," and provides:

8

**12.05 Mental Retardation and Autism**: Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22).  (Note: The scores specified below refer to those obtained on the WAIS, and are used only for reference purposes.  Scores obtained on other standardized and individually administered tests are acceptable, but the numerical values obtained must indicate a similar level of intellectual functioning.)  Autism is a pervasive developmental disorder characterized by social and significant communications deficits originating in the developmental period.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

*   *   *

C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;

In the body of his decision the ALJ gave careful and extended consideration to the contention that the plaintiff should have been found disabled under Listing 12.05C, and for a variety of reasons rejected that argument.  Without repeating his conclusions in detail he held that the IQ test results relied upon by the plaintiff were of limited validity, and looked to the plaintiff's history of holding numerous jobs, one of extended duration, notwithstanding the plaintiff's limited intellect as inconsistent with that position.  He also concluded that the evidence did not establish the existence of a physical or other mental impairment imposing additional and significant work-related limitation of function.[5]

In this Court's opinion, these determinations were within the ALJ's zone of choice as trier of the facts.

_____

[5]Although the ALJ did not specifically address the question, this Court notes that there is scant evidence of deficits in adoptive behavior manifested before age 22.

9

Contrary to the assertion in plaintiff's brief that the ALJ essentially ignored the opinions of various medical sources, he in fact discussed that evidence in some detail and explained his reasoning for rejecting conclusions stated by them.  As noted in defendant's brief, it appears that the plaintiff was seen by Drs. Martin, Cohen and Shields for the purpose of assessment to support his claim for disability benefits, and not for treatment.  This being so, their determinations were not entitled to the deference accorded to treating physicians.

Turning to plaintiff's second argument, while this Court might have preferred that the ALJ avail himself of the benefit of a medical expert, this Court does not believe that his failure to do so fatally undermines his decision.  In this Court's opinion, as the evidence bearing upon the plaintiff's mental status is sufficiently straight forward and the ALJ's articulation of the analysis of that evidence sufficiently cogent, the fact that the ALJ did not call upon a medical expert is not reversible error.

Plaintiff's final argument has several components.  It is argued: (1) that the ALJ ignored evidence originating from the plaintiff's sister concerning his need for her assistance while working as a kitchen helper; (2) the ALJ should have credited the plaintiff's testimony with regard to his need for help; and (3) the ALJ's hypothetical question to the vocational expert was flawed.  This Court finds no merit in these contentions.

In his decision the ALJ specifically stated that he "has considered the allegations of the claimant's sister at Exhibit 5E/9-16, but the undersigned does not find them credible nor does the undersigned find any additional limitations based on her limitations for the reasons discussed above."  By the same token, the ALJ discounted the credibility of the plaintiff's testimony on this subject.  These determinations were within the ALJ's discretion as trier of the facts.

10

As regards the hypothetical question propounded to the vocational expert, it was consistent with the plaintiff's residual functional capacity as found by the ALJ.

This court is constrained to observe that the plaintiff's limited intellectual capacity is nothing new, and that he has been gainfully employed, albeit at jobs of varying lengths, throughout his adult life and that his claim of disability arose when he purportedly sustained physical impairments which find no support in the objective medical evidence. While he asserted in his testimony that he suffered from physically limiting problems with his back and knees that testimony is negated by the medical evidence in this record.

It is recommended that final judgment be entered in defendant's favor.



s/DAVID S. PERELMAN
United States Magistrate Judge


DATE:   April 17, 2009


## OBJECTIONS

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

11